IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITADEL SECURITIES LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>CONSOLIDATED AUDIT TRAIL, LLC,<br><br>      Defendant. | Civil Action No. 26-cv-00134 |

**DECLARATION OF STEPHEN JOHN BERGER IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**DECLARATION OF STEPHEN JOHN BERGER IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, I, Stephen John Berger, declare as follows:

1.      My name is Stephen John Berger. I am a Managing Director and the Global Head of Government & Regulatory Policy at Citadel Securities LLC (Citadel Securities). I have served in this role since 2011.

2.      I am over 18 years old. This Declaration is based upon my personal knowledge and belief and/or upon my review of business records of Citadel Securities. If called as a witness, I could and would testify competently thereto.

**Citadel Securities**

3.      Citadel Securities is a broker-dealer that is registered with the U.S. Securities & Exchange Commission (SEC). Citadel Securities is also a member of the Financial Industry Regulatory Authority (FINRA) and all U.S. registered national securities exchanges.

4.      As a broker-dealer, Citadel Securities regularly buys and sells publicly traded stocks both on U.S. securities exchanges and over-the-counter on its own behalf and on behalf of retail and institutional clients.

**CAT Fees Paid By Citadel Securities**

5.      On September 6, 2023, the SEC issued an order establishing a funding model for the Consolidated Audit Trail (CAT). 88 Fed. Reg. 62628 (2023 Order).

6.      The 2023 Order provided that the CAT would be funded through a new transaction tax—a CAT fee—on every executed share in the U.S. equities and options markets, which would be paid to an entity known as CAT LLC. *See* Order 62629-30.

7.      Under the Order, Citadel Securities was required to pay the fee imposed on each executed share where Citadel Securities was considered to be the executing broker. The Order also

authorized the exchanges and FINRA to pass 100% of their costs relating to the CAT onto their member broker-dealers, including Citadel Securities. *See* Order 62684 n.1135, 62637-38, 62666. In fact, FINRA sought to pass its costs onto its member firms, including Citadel Securities. *See* FINRA Cost-Shifting Filing, https://perma.cc/WT9G-PT63. Under the Order, all of the exchanges were permitted to do the same at any time. *See* Order 62684 n.1135, 62637-38, 62666.

8.      The U.S. Court of Appeals for the Eleventh Circuit vacated the 2023 Order as unlawful in July 2025. *Am. Sec. Ass'n v. SEC*, 147 F.4th 1264 (11th Cir. 2025).

9.      Citadel Securities paid a total of $56,424,119 in CAT fees to CAT LLC and to reimburse FINRA for its portion of CAT fees under the auspices of the 2023 Order, $39,990,907 of which was assessed to pay for the ongoing costs of the CAT.

**Citadel Securities' Petition for Rulemaking**

10.      CAT LLC has stated that it intends to spend down the reserve it collected under the 2023 Order. *See* Letter from CAT LLC to V. Countryman 13 (Dec. 18, 2025), https://tinyurl.com/4ucazm37; CAT LLC, 2026 Financial & Operating Budget (Dec. 11, 2025), https://perma.cc/3TMK-7AQ2.

11.      On January 15, 2026, Citadel Securities filed a petition for rulemaking with the SEC asking the agency to stop CAT LLC from spending the reserve and to direct CAT LLC to return the reserve to fee-payors in full or at least in part. A true and correct copy of that petition is attached to this declaration as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on January 15, 2026

Stephen John Berger

# EXHIBIT A

**CITADEL | Securities**

January 15, 2026

Ms. Vanessa A. Countryman
Secretary
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549–1090

**Re:    Petition for Rulemaking to Amend CAT NMS Plan to Direct Proper Use of CAT LLC Reserve**

Dear Secretary Countryman:

Citadel Securities LLC (Citadel Securities) respectfully petitions the Securities and Exchange Commission (Commission or SEC) pursuant to Rule 192 of the Commission's Rules of Practice[1] for a rulemaking to amend Section 11.1 of the National Market System Plan governing the Consolidated Audit Trail (CAT NMS Plan or Plan). The requested amendment would instruct Consolidated Audit Trail, LLC (CAT LLC or Company) how to use (and not use) the reserve funds it has accumulated in excess of amounts permitted under the Plan by collecting fees under a funding order that has been vacated as unlawful by the U.S. Court of Appeals for the Eleventh Circuit. The need for Commission action is pressing, as CAT LLC has stated that it is already spending the reserve to cover the Consolidated Audit Trail's (CAT) expenses in 2026 and will spend the entire amount by August of this year. The Commission therefore should use its authority under Rule 608(b)(4) to put an amendment into immediate effect.[2]

As one of the industry's leading market makers and a registered broker-dealer, Citadel Securities is subject to the CAT's reporting obligations, and it was required to pay tens of millions of dollars in fees under the CAT's now-vacated funding order. Those fees make up a substantial portion of the reserve that CAT LLC now intends to spend down. Citadel Securities thus has an interest in whether the reserve is returned and how the reserve is used both now and in the future in the event another funding order is issued.

## I.    Background

### A.  CAT Funding Principles and the 2023 Order

As approved in 2016, the CAT NMS Plan provides general principles for funding the CAT while deferring the choice of a particular allocation of costs between self-regulatory organizations (SROs) and broker-dealers to a later date.[3] Thus, any allocation of CAT costs in the form of "fees" requires the Commission separately to approve an amendment to the CAT NMS Plan that sets forth a funding model. Section 11.1 of the Plan directs that "[a]ny surplus of the Company's

---

[1] 17 C.F.R. § 201.192(a).

[2] 17 C.F.R. § 242.608(b)(4).

[3] 81 Fed. Reg. 84696, 84793, 84795 (2016).

**CITADEL | Securities**

revenues over its expenses shall be treated as an operational reserve to offset future fees."[4] That limitation has existed since the Plan was first approved.[5]

Prior to SEC approval of a specific funding model for collecting fees, the CAT was funded using loans from the SROs that make up CAT LLC.[6] CAT LLC therefore did not budget for, hold, or spend any reserve before CAT fees were imposed pursuant to a Commission-approved funding model.[7]

The Commission approved a funding model for the CAT in 2023.[8] Among the various changes to the CAT NMS Plan approved by the 2023 Order was the following additional restriction on the reserve in Section 11.1: "[T]he budget will include an amount reasonably necessary to allow the Company to maintain a reserve of not more than 25% of the annual budget."[9] The amended Plan also reiterated the limits on how the reserve was to be used, limits that have existed since the Plan was first approved: "To the extent collected CAT fees exceed CAT costs, including the reserve of 25% of the annual budget, such surplus *shall be used to offset future fees*."[10]

Citadel Securities and the American Securities Association petitioned for review of the 2023 Order in the Eleventh Circuit, contending that the CAT itself exceeds the Commission's statutory authority and that the 2023 Order violated the Administrative Procedure Act (APA) in multiple respects.[11] While that petition was pending, the SROs nonetheless moved forward with collecting CAT fees premised on the 2023 Order, with the first invoices coming due in November 2024.[12]

The regulatory landscape changed significantly in 2025. In May 2025, Chairman Atkins announced that the Commission would undertake "a comprehensive review of the CAT."[13] The Commission's review remains ongoing.[14] And in July 2025, the Eleventh Circuit issued a decision

---

[4] CAT NMS Plan, § 11.1(c) (Mar. 24, 2023) (March 2023 CAT NMS Plan), https://perma.cc/QD85-RHDL.

[5] CAT NMS Plan, § 11.1(c) (Nov. 15, 2016) (2016 CAT NMS Plan), https://perma.cc/88EB-FAEU.

[6] *See* 88 Fed. Reg. 17086, 17112 (2023).

[7] *See* CAT LLC, *2022 Financial & Operating Budget* (July 25, 2023) (listing no reserve line item), https://perma.cc/VD3Y-2XR4; CAT LLC, *2023 Financial & Operating Budget* (Nov. 7, 2023) (stating reserve would be included in budget "no later than when forward looking or budget-based industry fees are implemented"), https://perma.cc/6GC2-HNY3; CAT LLC, *2024 Financial & Operating Budget* (July 31, 2024) (budgeting for reserve once "Projected Fees" were estimated to begin in Q4), https://perma.cc/CH8P-25B4.

[8] 88 Fed. Reg. 62628 (2023) (2023 Order).

[9] CAT NMS Plan, § 11.1(a)(ii) (Sept. 6, 2023) (September 2023 CAT NMS Plan), https://perma.cc/USU3-6QQ5.

[10] *Id.* (emphasis added); *see* 2016 CAT NMS Plan § 11.1(c) ("Any surplus of the Company's revenues over its expenses shall be treated as an operational reserve to offset future fees.").

[11] *See Am. Sec. Ass'n v. SEC*, 147 F.4th 1264 (11th Cir. 2025) (*ASA*).

[12] Letter from Citadel Securities to V. Countryman 3 (Aug. 28, 2024), https://tinyurl.com/8m8d49dx.

[13] P. Atkins, *Prepared Remarks Before SEC Speaks* (May 19, 2025), https://tinyurl.com/4pez7he9.

[14] Office of Information & Regulatory Affairs, *Evaluating the Continued Effectiveness of the Consolidated Audit Trail* (Spring 2025) (listing potential rulemaking on "comprehensive rethink" of the CAT as in "Prerule Stage"), https://tinyurl.com/2tnc42as.

2

**CITADEL | Securities**

in *ASA* declaring the 2023 Order unlawful.[15] The court found it unnecessary to resolve whether the CAT itself exceeds the SEC's statutory authority, holding instead that the 2023 Order was arbitrary and capricious under the Administrative Procedure Act.[16] As to the remedy, the court rejected CAT LLC's request to remand the 2023 Order without vacatur, reasoning that a vacatur likely would not trigger disruptive consequences: "The CAT has operated without a funding order since 2016 and will presumably continue to do so; vacating the 2023 Funding Order will minimally affect the status quo."[17]

The SROs continued to demand that broker-dealers pay CAT fees after the Eleventh Circuit's opinion issued in July 2025 by sending fee invoices through December 2025.[18] In light of *ASA*, there is currently no Commission-approved funding model in place, meaning that the SROs are not permitted to allocate CAT costs to broker-dealers in the form of "fees."

### B.  CAT LLC's Reserve Run-up and Ongoing Spend-down

Even when the unlawful 2023 funding model was in place, CAT LLC improperly allowed the amount of its reserve to balloon far beyond 25% of its budgeted expenses over the course of 2025. CAT LLC violated the plain language of the CAT NMS Plan under the 2023 Order and ignored multiple opportunities to adjust its collection of fees.

To begin, CAT LLC dramatically underestimated its fee revenue from the beginning. CAT LLC started collecting CAT fees during Q4 of 2024 and entered 2025 with an established reserve. At that time, CAT LLC expected to have approximately $38.3 million in reserve by the end of 2024 and planned to add another $23.8 million by the end of 2025. Based on those predictions, CAT LLC anticipated a reserve of roughly $62.1 million by the end of 2025—an amount just under 25% of the $248.8 million projected in the 2025 Budget.[19]

In reality, however, CAT LLC wound up having $70.9 million in reserve at the end of 2024, so the surplus from 2024 alone exceeded the 25% reserve cap for 2025, contrary to the Plan as amended by the 2023 Order.[20] CAT LLC then accrued an additional $28.8 million in reserves in Q1 of 2025 and estimated that it would collect another $11.8 million in reserves during Q2.[21] Putting those amounts together, CAT LLC revised its estimates to a reserve of approximately $111.6 million at the end of Q2 2025—nearly double the $62.2 million limit directed by the Commission.[22] At that point, CAT LLC reduced the per-executed-share fee rate from $0.000022 to $0.000009—purportedly to offset CAT fees during Q3 and Q4 by spending down around $55

---

[15] 147 F.4th at 1269.

[16] *Id.* at 1273–74.

[17] *Id.* at 1279.

[18] *See* CAT LLC, *CAT Fee Alert 2025-4* (Nov. 25, 2025) (CAT Fee Alert), https://perma.cc/KMR6-CN89.

[19] *See, e.g.*, SR-MEMX-2024-49 at 47 & n.75 (Dec. 31, 2024) https://tinyurl.com/3hm2dx6n.

[20] SR-MEMX-2025-20 at 55 (July 2, 2025), https://tinyurl.com/42wm4vc2.

[21] *See id.* at 55, 59, 87.

[22] *See id.* at 55 & n.93.

million of the reserve.[23] But CAT LLC was wrong again—ultimately collecting $55.49 million in excess of its Q2 costs—nearly five times more than the $11.8 million excess estimated in the SROs' mid-year filings.[24] By the end of Q2 2025, CAT LLC's reserve was over $155 million—nearly triple the authorized amount.[25]

CAT LLC compounded its overcollection of fees by failing to properly account for a reduction in its expenses. At first, CAT LLC anticipated roughly $248.8 million in 2025 expenses.[26] Based on actual expenses in Q1 and part of Q2, however, the SROs adjusted that estimate to $228.3 million in their mid-year fee filings.[27] The most recent 2025 budget (from early November 2025), however, states that total 2025 CAT expenses will total around $187.5 million.[28]

CAT LLC nevertheless continued to bill fee-payors at the rates calculated in the mid-year Rule 19b-4 filings—premised on total annual expenses of $228.3 million.[29] The result was that when it came time for CAT LLC to use the excess reserve to cover the difference between CAT expenses and fees in Q3 and Q4, it had much less of a shortfall to cover.[30] CAT LLC thus successfully avoided spending down even the already-too-low $54.5 million amount it had committed to spending from the reserve in the middle of the year.[31]

As a result of all this, CAT LLC's 2026 budget now documents a reserve amount of **$119,128,336** for the start of 2026.[32] Even based on CAT LLC's original 2025 budget of $248.8 million (with a reserve cap of roughly $62.2 million), that reserve is *nearly double* the amount that was allowed under the 2023 Order. But the true overage is even higher because CAT LLC's 2025 expenses (and thus the 25% cap) have since decreased, with expenses expected to top out at $187.5 million.[33]

Over the course of 2025, CAT LLC thus systematically collected tens of millions more in fees from broker-dealers than even the unlawful 2023 Order allowed. CAT LLC then used those

---

[23] *Id.* at 13, 56–57.

[24] CAT LLC, *2025 Financial & Operating Budget* (Nov. 7, 2025) (CAT Second Revised 2025 Budget), https://perma.cc/X4S3-9K8U.

[25] *Id.*

[26] CAT LLC, *2025 Financial & Operating Budget* (Nov. 20, 2024) (CAT 2025 Budget), https://perma.cc/CN2E-3X6Z.

[27] CAT LLC, *2025 Financial & Operating Budget* (May 19, 2025) (CAT First Revised 2025 Budget) https://perma.cc/FY5P-KM7M.

[28] CAT Second Revised 2025 Budget.

[29] *See* CAT Fee Alert at 1 (stating rates of $0.000009 for prospective CAT costs and $0.000013 for historical CAT costs would continue through December 2025).

[30] *See* CAT Second Revised 2025 Budget (reducing "Estimated Liquidity Reserve Balance" by "Excess/(Deficiency) of Revenue Over/(Under) Total Expenses").

[31] *See* CAT Second Revised 2025 Budget (showing a reserve spend-down of only $30.27 million in Q3 and Q4).

[32] CAT LLC, *2026 Financial & Operating Budget* (Dec. 11, 2025) (CAT 2026 Budget), https://perma.cc/3TMK-7AQ2.

[33] CAT Second Revised 2025 Budget.

CITADEL | Securities

unlawfully collected fees to run up a reserve that far exceeds what is permitted under the CAT NMS Plan. Notably, CAT LLC did so against the backdrop of the pending challenge to the 2023 Order, which threatened to put a stop to its ability to collect further fees from broker-dealers. Indeed, from the moment the 2023 Order was challenged, CAT LLC sought to insure itself against that Order's invalidation by extracting as many unlawful fees as possible, as quickly as possible, and for as long as possible.

Now, CAT LLC has signaled that it intends to cash in on its insurance policy by spending down the excess reserve that it unlawfully collected in 2025—not to "offset future fees" allocated pursuant to a lawful and Commission-approved funding model as the CAT NMS Plan has long required, but to fund its operations in 2026 using broker-dealer funds anyway. The Company's recently released 2026 budget shows that it is already using the unlawfully collected reserve to pay the CAT's expenses rather than reverting to the pre-2023-Order approach of covering those expenses using loans to CAT LLC from the SROs.[34] And it confirmed as much in recent letters submitted in support of its new funding proposal.[35] That use of the reserve makes a mockery of both the CAT NMS Plan and the Eleventh Circuit's decision: unable to operate under a lawful funding model, the SROs have instead decided to spend ill-gotten broker-dealer money without *any* Commission oversight or approval, without *any* Commission-approved funding model in place, and contrary to the terms of the CAT NMS Plan.

## II. Proposed Amendments & Supporting Arguments

CAT LLC plans to spend down the reserve while the CAT itself is in limbo. The Commission is in the midst of its comprehensive review of this surveillance system, which could have serious implications for how the CAT operates and is funded. The Commission also has not approved a new funding order, so no fees are currently being collected from broker-dealers. It is the Commission—not CAT LLC—that should decide what to do with the money improperly collected and retained under the unlawful 2023 Order. And more to the point, CAT LLC's plan to spend down the reserve is unlawful several times over. Citadel Securities therefore petitions the Commission to adopt amendments to the CAT NMS Plan that would remedy these serious deficiencies. *First*, spending the reserve in the absence of any ongoing collection of CAT fees violates the CAT NMS Plan's directive that the reserve be used "to offset future fees." The Plan should be amended to require CAT LLC to seek and obtain Commission approval before spending the reserve when there is no operative funding model for collecting fees. *Second*, the reserve was built up unlawfully because the 2023 Order was invalid from the outset, as the Eleventh Circuit confirmed. The Plan should be amended to require CAT LLC to return the reserve to the parties who paid for it under the authority of that unlawful order. *Third*, the reserve was inflated unlawfully because CAT LLC blew past the 25% cap on the reserve that the 2023 Order imposed. So if the reserve is not refunded in full, in the alternative, the Plan should be amended to require CAT LLC to return the amount of the reserve that exceeds the 25% cap.

---

[34] *See* CAT 2026 Budget.

[35] Letter from CAT LLC to V. Countryman 13 (Dec. 18, 2025), https://tinyurl.com/4ucazm37 ("[T]he CAT's operations must be funded through its limited operational reserve, which is currently estimated to be exhausted in August 2026."); *see also* Letter from CAT LLC to V. Countryman 2 (Jan. 14, 2026) (CAT LLC January 2026 Comment Letter), https://tinyurl.com/pj4vz6e3.

5

**CITADEL | Securities**

## A. Require CAT LLC To Obtain Commission Approval Before Spending the Reserve

The first problem with CAT LLC's announced plan to spend the reserve in 2026 to fund its own operations is that the CAT NMS Plan requires CAT LLC to use the reserve "to offset future fees" allocated pursuant to lawful and Commission-approved funding model, not as a freestanding slush fund for covering the CAT's expenses using broker-dealers' money even in the absence of an approved funding model.[36] CAT LLC has insisted otherwise based on the Plan's general description of the reserve as one that the CAT Operating Committee deems appropriate "for prudent operation of the Company."[37] But the Plan goes on to specify exactly *how* the reserve is to be used to support that "prudent operation," and that is by "offset[ting] future fees."[38]

CAT LLC also has pressed an untenable reading of the word "fees" in that provision, contending that it refers to the CAT's "expenses" rather than to "fees" imposed under a funding model.[39] Yet the same sentence already refers to CAT's "expenses," and it then uses a different term—"fees"—for what the reserve must be used to "offset."[40] And the rest of the provision invariably uses the standalone term "fees" to refer to CAT fees imposed under a funding model.[41] The only other uses of "fees" in the provision are in the phrase "fees, costs and expenses," which plainly refer to what CAT LLC has "incurred" in creating and implementing the CAT.[42] CAT LLC's arguments are therefore nothing more than a desperate attempt to rewrite the Plan to give the Company carte blanche to spend unlawfully collected funds in the absence of an operative funding model.

Every dollar of the reserve spent now without fees to offset is a dollar less that can and should be used to offset future CAT fees in the event another funding model is approved. Moreover, there may *never be* any future fees to offset depending on the results of the Commission's comprehensive review of the CAT and its funding. But however the Commission ultimately decides the CAT should be funded, over $119 million will be out of the SEC's reach if CAT LLC is permitted to spend down the reserve in the interim. Spending the reserve in the absence of a funding model providing for fees to offset clearly violates the CAT NMS Plan, and it is at odds with CAT LLC's representations made to the Eleventh Circuit that any "overpayments" by broker-dealers and their customers could be fairly addressed in future proceedings.[43]

---

[36] March 2023 CAT NMS Plan, § 11.1(c).

[37] CAT LLC January 2026 Comment Letter 4 (quoting 2016 CAT NMS Plan, § 11.1(a)).

[38] March 2023 CAT NMS Plan, § 11.1(c); *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("'the specific governs the general'"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183-88 (2012) (same).

[39] CAT LLC January 2026 Comment Letter 4.

[40] March 2023 CAT NMS Plan, § 11.1(c).

[41] *See id.* § 11.1(b), (d).

[42] *Id.* § 11.1(c).

[43] *See Motion for Stay and Injunctive Relief* at 4, 11, *Am. Sec. Ass'n v. SEC*, 23-13396 (11th Cir. Sept. 13, 2024) (explaining why unlawfully demanded CAT fees are unrecoverable); *CAT LLC Opp. to Motion for Stay and Injunctive Relief* at 17, *Am. Sec. Ass'n v. SEC*, 23-13396 (11th Cir. Sept. 30, 2024) (contending overpayments "could be adjusted in any CAT postmortem proceedings"); *CAT LLC Petition for Panel Rehearing* at 11, *Am. Sec. Ass'n v. SEC*, 23-

**⠿ CITADEL | Securities**

At a minimum, the Commission should therefore amend the plan to require CAT LLC to obtain Commission approval before it spends the reserve in the absence of a lawful, operative funding model. To that end, Citadel Securities proposes the following new paragraph (d) in Section 11.1 of the CAT NMS Plan (March 2023 Version):

> *(d) In the absence of an operative funding model approved by the Commission, the Company may not spend funds collected through previous CAT fees unless it first notifies and obtains written approval to do so from the Commission or its designee.*

> *(d)* *(e)* Consistent with this Article XI, the Operating Committee shall adopt policies, procedures, and practices regarding the budget and budgeting process, assignment of tiers, resolution of disputes, billing and collection of fees, and other related matters. For the avoidance of doubt, as part of its regular review of fees for the CAT, the Operating Committee shall have the right to change the tier assigned to any particular Person in accordance with fee schedules previously filed with the Commission that are reasonable, equitable and not unfairly discriminatory and subject to public notice and comment, pursuant to this Article XI. Any such changes will be effective upon reasonable notice to such Person.

### B. Direct CAT LLC to Return the Reserve in Full

The second and perhaps even more obvious problem with CAT LLC's plan to spend the reserve is that every dollar of it was unlawfully collected under the 2023 Order. The CAT fees that CAT LLC used to inflate the reserve were imposed under biannual Rule 19b-4 filings, which, in turn, rested on the authority of the 2023 Order.[44]

The Eleventh Circuit's decision in *ASA*, however, confirms that the 2023 Order was unlawful from the outset.[45] The SRO rules that relied on the 2023 Order to purport to require broker-dealers like Citadel Securities to pay CAT fees were therefore also unlawful. It makes no difference that the Eleventh Circuit did not formally review the Rule 19b-4 filings themselves. Under the Exchange Act, the rules imposed by those filings can be enforced only "to the extent [they] are not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal and State law."[46] The Eleventh Circuit's holding in *ASA* confirms that the 2023 Order is—and always was—a legal nullity. Under the Exchange Act, so are the Rule 19b-4 filings that relied upon them. But by retaining and attempting to spend down the reserve to fund its own costs, CAT LLC seeks to perpetuate the unlawful 2023 Order for another eight months.

The answer to this fundamental problem is to return the reserve in its entirety to the entities that were unlawfully forced to pay CAT fees under the 2023 Order, in proportion to the amounts

---

13396 (11th Cir. 2025) (arguing that "any 'overpayments'" made by broker-dealers "'can be addressed through a revised funding model'").

[44] *See, e.g.*, SR-NASDAQ-2025-049 (June 30, 2025), https://perma.cc/UQ9U-CT95 (relying on "Funding Model" approved by 2023 Order to justify fee's rate, statutory basis, and effects on competition); *see also* 15 U.S.C. § 78s(b)(1) (requiring SROs to state "basis and purpose" for proposed rule changes).

[45] 147 F.4th at 1269.

[46] 15 U.S.C. § 78s(b)(3)(C).

**CITADEL | Securities**

paid by each. To that end, Citadel Securities therefore proposes the following new paragraph (d) (or new paragraph (e), if the first proposed amendment above is adopted) to Section 11.1 of the CAT NMS Plan (March 2023 Version):

> *(d) The Company shall return to each Participant and Industry Member the portion of the reserve attributable to fees collected from that Participant or Industry Member under of the authority of the vacated funding model approved by the Commission on September 6, 2023, in proportion to the amounts paid by each Participant and Industry Member.*

> ~~(d)~~ *(e) Consistent with this Article XI, the Operating Committee shall adopt policies, procedures, and practices regarding the budget and budgeting process, assignment of tiers, resolution of disputes, billing and collection of fees, and other related matters. For the avoidance of doubt, as part of its regular review of fees for the CAT, the Operating Committee shall have the right to change the tier assigned to any particular Person in accordance with fee schedules previously filed with the Commission that are reasonable, equitable and not unfairly discriminatory and subject to public notice and comment, pursuant to this Article XI. Any such changes will be effective upon reasonable notice to such Person.*

### C. In the Alternative, Direct CAT LLC To Return the Excess Reserve

Yet another problem with CAT LLC's plan to retain the reserve and spend it to fund its operations in 2026 is that by over-collecting fees from broker-dealers, CAT LLC did not comply with even the terms of the unlawful 2023 Order. The Plan as amended by that Order provided that "[t]o the extent collected CAT fees exceed CAT costs, including the reserve of 25% of the annual budget, such surplus shall be used to offset future fees."[47] By at least mid-2025, CAT LLC was aware that its initial estimates of revenue were too low and its initial estimates of expenses were too high. Yet instead of adjusting fees to arrive at a lawful reserve amount, CAT LLC compounded those errors in the second half of the year, persisting in charging inflated CAT fees even as its expenses continued to decrease. As explained above, the result is a $119 million reserve that is approximately $72 million more than 25% of the revised $187.5 million 2025 budget.

If the Commission does not order CAT LLC to return the reserve in its entirety to Participants and Industry Members, the Commission alternatively should at a minimum direct CAT LLC to return the portion of the reserve that exceeds 25% of the final 2025 budget to the entities that paid CAT fees under the 2023 Order, in the proportion to the amounts paid. To that end, Citadel Securities proposes the following alternative new paragraph (d) (or new paragraph (e), if the first proposed amendment above is adopted) to Section 11.1 of the CAT NMS Plan (March 2023 Version):

> *(d) The Company shall return to each Participant and Industry Member the portion of the excess reserve attributable to fees collected from that Participant or Industry Member under the authority of the vacated funding model approved by the Commission on September 6, 2023. The excess reserve shall be determined by*

---

[47] September 2023 CAT NMS Plan § 11.1(a)(ii).

8

**⊞ CITADEL | Securities**

*calculating the amount of the reserve that exceeds 25% of the Company's final 2025 budget. The excess reserve shall be returned in proportion to the amounts paid by each Participant and Industry Member.*

~~(d)~~ *(e) Consistent with this Article XI, the Operating Committee shall adopt policies, procedures, and practices regarding the budget and budgeting process, assignment of tiers, resolution of disputes, billing and collection of fees, and other related matters. For the avoidance of doubt, as part of its regular review of fees for the CAT, the Operating Committee shall have the right to change the tier assigned to any particular Person in accordance with fee schedules previously filed with the Commission that are reasonable, equitable and not unfairly discriminatory and subject to public notice and comment, pursuant to this Article XI. Any such changes will be effective upon reasonable notice to such Person.*

## III. Conclusion

Citadel Securities recognizes that the Commission is in the midst of its comprehensive review of the CAT and that it is also reviewing the Company's latest attempt to implement a funding model to allocate CAT costs to broker-dealers. But this issue with the reserve cannot await the resolution of either process. CAT LLC purports to be spending the reserve at a rate of almost $15 million per month—amounts that will be completely unrecoverable for both broker-dealers and the SEC. The Commission should take immediate action to amend the CAT NMS Plan to stop CAT LLC from spending the reserve, and it should put the amendment into immediate effect under Rule 608(b)(4).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

We appreciate the Commission's willingness to consider these requests. Please feel free to contact the undersigned with any questions or need for additional information.

Respectfully,

/s/ Stephen John Berger

Managing Director

Global Head of Government & Regulatory Policy

cc:     Paul S. Atkins, SEC, Chairman
          Hester M. Peirce, SEC, Commissioner
          Mark T. Uyeda, SEC, Commissioner



**U.S. Securities and Exchange Commission**
**Office of the Secretary**

January 16, 2025

**via Email**

Stephen John Berger
Managing Director, Global Head of Government and Regulatory Policy
c/o Jonah Platt
U.S. Head of Government & Regulatory Policy
Citadel LLC
425 Park Ave
New York, NY 10022
jonah.platt@citadel.com

     Re: *Rulemaking Petition File No. 4-878*

Dear Petitioner:

     This letter acknowledges receipt by this office of your petition for rulemaking to amend the CAT NMS Plan to direct the use of certain reserve funds that have been collected.

     The petition has been assigned the file number noted above and has been referred to the appropriate division(s) of the Commission. The Office of the Secretary will notify you of any pertinent action taken by the Commission.

          Sincerely,

          J. Matthew DeLesDernier
          Deputy Secretary