# EXHIBIT 4

**VIA EMAIL (rule-comments@sec.gov)**

January 14, 2026

Ms. Vanessa Countryman
Secretary
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-1090

>       Re:    File Number 4-698
>              Notice of Filing of Amendment to the National Market System Plan Governing the
>              Consolidated Audit Trail regarding CAT Funding Model – Response to Comments

Dear Ms. Countryman:

On September 5, 2025, the Consolidated Audit Trail, LLC ("CAT LLC"), on behalf of the Participants[1] in the National Market System Plan Governing the Consolidated Audit Trail[2] (the "CAT NMS Plan" or "Plan"), filed with the Securities and Exchange Commission ("SEC" or "Commission") a proposed amendment to the CAT NMS Plan pursuant to Rule 608 of Regulation NMS under the Securities Exchange Act of 1934 ("Exchange Act")[3] to implement a revised funding model (the "Funding Proposal") for the consolidated audit trail (the "CAT") and to establish a fee schedule for Participant CAT fees in accordance with the Funding Proposal.[4] The Proposed Amendment was published for comment in the Federal Register on September 17, 2025.[5] On November 21, 2025, the Commission instituted proceedings to determine whether to approve or disapprove the Proposed Amendment.[6] On December 18, 2025, CAT LLC responded to the comment letters that had been submitted to date on the Proposed Amendment.[7]

---

[1] The twenty-seven Participants of the CAT NMS Plan are:  24X National Exchange LLC, BOX Exchange LLC, Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe Exchange, Inc., Financial Industry Regulatory Authority, Inc., Investors Exchange LLC, Long-Term Stock Exchange, Inc., MEMX LLC, Miami International Securities Exchange LLC, MIAX Emerald, LLC, MIAX PEARL, LLC, MIAX Sapphire, LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, Nasdaq PHLX LLC, The NASDAQ Stock Market LLC, New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE National, Inc., and NYSE Texas, Inc.

[2] The CAT NMS Plan is a national market system plan approved by the Commission pursuant to Section 11A of the Exchange Act and the rules and regulations thereunder.  *See* Securities Exchange Act Rel. No. 79318 (Nov. 15, 2016), 81 Fed. Reg. 84696 (Nov. 23, 2016) ("CAT NMS Plan Approval Order").  The full text of the CAT NMS Plan is available at www.catnmsplan.com.  Unless otherwise defined herein, capitalized terms are defined as set forth in the CAT NMS Plan or the Proposed Amendment, as applicable.

[3] 17 C.F.R. § 242.608.

[4] Letter from Robert Walley, CAT NMS Plan Operating Committee Chair, to Vanessa Countryman, Secretary, Commission (Sept. 5, 2025) ("Proposed Amendment").  *See also* Securities Exchange Act Rel. No. 98290 (Sept. 6, 2023), 88 Fed. Reg. 62628 (Sept. 12, 2023) ("Executed Share Model Approval Order").

[5] Securities Exchange Act Rel. No. 103960 (Sept. 12, 2025), 90 Fed. Reg. 44910 (Sept. 17, 2025).

[6] Securities Exchange Act Rel. No. 104234 (Nov. 21, 2025), 90 Fed. Reg. 54438 (Nov. 26, 2025) ("OIP").

[7] Letter from Robert Walley, CAT NMS Plan Operating Committee Chair, to Vanessa Countryman, SEC (Dec. 18, 2025), https://www.sec.gov/comments/4-698/4698-685927-2125515.pdf.

Ms. Vanessa Countryman
January 14, 2026
Page 2

This letter responds to the additional comment letter submitted by the Securities Industry and Financial Markets Association ("SIFMA") on December 19, 2025.[8]  SIFMA incorrectly asserts that, as a result of the Eleventh Circuit's decision vacating the 2023 funding model,[9] use of the CAT operational reserve to fund CAT costs "would be unlawful and inconsistent with the Court's decision," and recommends that the Commission order such reserve funds be held in escrow.

SIFMA's letter is based on a mistaken reading of the Eleventh Circuit Opinion and the CAT NMS Plan.  The Eleventh Circuit did not address the reserve at all, and use of the remaining reserve to fund CAT costs is fully consistent with the CAT NMS Plan.  SIFMA's attempt to reinterpret and expand the Court's decision as prohibiting use of the reserve to fund CAT costs until a new funding model is in place—while framed as addressing a narrow issue—would result in a more sweeping adverse situation, where the CAT lacks the funds necessary to continue its operations.  Given the current absence of a funding model, the CAT's limited operational reserve (currently estimated to be exhausted in August 2026) is the only source of funding to support the CAT's ongoing operations.  Accordingly, SIFMA's proposed course of action would imperil the sustained operation of the CAT, and, relatedly, the ability of regulators to use the CAT to oversee the markets.

***The CAT NMS Plan provides that no Participant shall be obligated to contribute capital or make loans to the Company if it does not agree to do so.***

Initially, SIFMA's letter begins with an incorrect presumption.  Specifically, SIFMA notes that the Participants funded CAT directly prior to September 2023 and asserts that, as a result of the Court's decision, the Participants "are now subject to the same funding obligations as they were prior to the Commission's approval of the 2023 funding model."[10]

SIFMA does not cite any provision of the CAT NMS Plan for this statement.  Indeed, it cannot since such funding is not mandated by the CAT NMS Plan.  On the contrary, Section 3.8(a) of the CAT NMS Plan provides that, "[e]xcept as may be determined by the unanimous vote of all the Participants or as may be required by applicable law, no Participant shall be obligated to contribute capital or make loans to the Company."  Thus, no Participant is obligated to make loans to the CAT if it does not agree to do so, resulting in the CAT having been funded entirely by voluntary, interest-free loans from the Participants prior to the SEC's approval of the 2023 funding model.  There should be no presumption that every Participant will voluntarily agree to loan funds to the Company if the operational reserve is frozen.

More broadly, as the Court recognized, the CAT NMS Plan has always "required both the self-regulatory organizations and the broker-dealers to bear the costs of the CAT."[11]  Accordingly,

---

[8]    Letter from Katie Kolchin, Managing Director, Head of Equity & Options Market Structure, and Gerald O'Hara, Vice President & Assistant General Counsel, SIFMA, to Vanessa Countryman, SEC (Dec. 19, 2025) ("SIFMA Letter II"), https://www.sec.gov/comments/4-698/4698-686527-2127374.pdf.

[9]    *Am. Sec. Ass'n, Citadel Sec. LLC v. U.S. Sec. & Exch. Comm'n*, No. 23-13396, 147 F.4th 1264 (11th Cir. 2025) ("Eleventh Circuit Opinion").

[10]   SIFMA Letter II at 3.

[11]   Eleventh Circuit Opinion, 147 F.4th at 1271.

Ms. Vanessa Countryman
January 14, 2026
Page 3

SIFMA's suggestion that the Participants have an obligation to fund CAT alone conflicts with what the CAT NMS Plan has provided from the outset.

***The Court's decision did not vacate, let alone address, existing provisions of the CAT NMS Plan governing the use of a reserve for the prudent operation of the CAT.***

SIFMA also argues that, "[b]ased on the Court's vacatur of the 2023 funding model, CAT LLC is now prohibited from using the reserves in any manner to fund the CAT," and that "[a]ny attempt by the Plan Participants to use the reserves to fund CAT costs would be in direct contravention of the Court's decision and unlawful."[12]  SIFMA does not cite any language from the Court's decision to support this contention because the Court never addressed, much less restricted, how the CAT can use any reserve funds in its possession.

Similarly, SIFMA argues that "the Court's decision precludes CAT LLC from using any of the reserve to pay for CAT costs because all of those funds were charged and collected pursuant to the now-invalidated funding model."[13]  Again, this is an incorrect reading of the Court's decision, and SIFMA offers no citation to any language from the Court's decision that would support its asserted conclusion.  The Court's decision vacated the 2023 funding model governing the collection of CAT fees.  It did not vacate, or even address, existing provisions of the CAT NMS Plan governing the use of a reserve for the prudent operation of the CAT, or more broadly the continued operation of the system.

Finally, SIFMA cites to CAT LLC's 2023 funding model filing and incorrectly insinuates that the Participants "introduced the concept of a reserve in the funding model of the CAT NMS Plan" in that filing.[14]  As SIFMA concedes later on in its letter and as discussed below, the original CAT NMS Plan adopted in 2016 also included provisions that permit the creation of a reserve and the use of that reserve for the prudent operation of the Company, and those provisions remain in effect following the Eleventh Circuit Opinion.[15]

***The CAT NMS Plan requires that any surpluses be treated as an operational reserve to fund future CAT costs, as opposed to being distributed to the Participants as profits.***

SIFMA also asserts that "[a]ll that is left governing the reserve in Article XI is the directive that '[a]ny surplus of the Company's revenues over its expenses shall be treated as an operational reserve to offset future fees'"—in reference to Section 11.1(c) of the CAT NMS Plan.[16]  SIFMA incorrectly concludes that because "there will be no 'future fees' to 'offset' unless and until the SEC approves a new (and lawful) funding model," CAT LLC "cannot spend down the reserve in the absence of such a model and fees subsequently charged under it."[17]

---

12      SIFMA Letter II at 3-4.
13      SIFMA Letter II at 5.
14      SIFMA Letter II at 3.
15      *See* Section 11.1(a) and (c) of the CAT NMS Plan; CAT NMS Plan Approval Order at 84710.
16      SIFMA Letter II at 4.
17      SIFMA Letter II at 4.

Ms. Vanessa Countryman
January 14, 2026
Page 4

SIFMA's assertion that Section 11.1(c) alone governs the reserve is factually incorrect. Section 11.1(a) of the CAT NMS Plan requires the Operating Committee to approve an annual budget to "include the projected costs of the Company, including the costs of developing and operating the CAT for the upcoming year, and the sources of all revenues to cover such costs, *as well as the funding of any reserve that the Operating Committee reasonably deems appropriate for prudent operation of the Company*" (emphasis added). Thus, the original CAT NMS Plan contemplated the use of a reserve for the prudent operation of the CAT, and this provision both was unaltered by any funding model and remains in effect.

SIFMA's argument also rests on a mistaken interpretation of the isolated phrase "to offset future fees" in the last sentence of Section 11.1(c) of the CAT NMS Plan as referring to CAT fees imposed on Participants and Industry Members under a funding model. But the plain language and the purpose of Section 11.1(c) make clear that the reference to "fees" in that final sentence means the total fees, costs and expenses incurred in operating the CAT—not, as SIFMA argues, the CAT fees imposed on Participants and Industry Members under a funding model. Indeed, the penultimate sentence in Section 11.1(c) refers to the "fees, costs and expenses (including legal and consulting fees and expenses) incurred . . . in connection with the creation and implementation of the CAT"—making it clear that "fees" as used in the phrase "to offset future fees" is synonymous with costs incurred to operate the CAT.

Moreover, SIFMA's interpretation ignores the clear intent and purpose of the reserve provisions. As described in the Commission's 2016 approval order, the Commission added this provision to Section 11.1(c) to ensure that the CAT be operated on a "break-even" basis, with any surpluses treated as an operational reserve to offset future fees and not distributed to the Participants as profits.[18] Specifically, the Commission described this "clarification in the Plan to the effect that profits from fees *will go toward funding future costs instead of being redistributed among the SROs*."[19] Accordingly, the Commission has recognized that the purpose of the "to offset future fees" language was to ensure that any revenue surplus would go toward funding future CAT costs (*i.e.*, precisely what CAT proposes to do), as opposed to being distributed to the Participants as profits. Taken altogether, use of the remaining reserve to fund CAT costs for the prudent operation of the CAT is fully consistent with the CAT NMS Plan.

### *CAT LLC did not "over-collect" fees in contravention of the prior funding model.*

Finally, SIFMA incorrectly asserts "CAT LLC collected more fees from Industry Members than the funding model permitted even while the 2023 funding model was still in effect."[20] This argument is based on a mistaken understanding of the 2023 funding model.

Under the 2023 funding model, the Fee Rate was calculated twice per year based on reasonably projected CAT costs and reasonably projected executed equivalent share volumes. Prior to Section 11.1(a)(ii) of the CAT NMS Plan being vacated by the Eleventh Circuit, that

---

18    CAT NMS Plan Approval Order at 84792.
19    CAT NMS Plan Approval Order at 84881 (emphasis added); *see also id.* at 84792-93 (explaining the intent to operate the CAT on a break-even basis and that "any surplus of the Company's revenues over its expenses will be treated as an operational reserve").
20    SIFMA Letter II at 4.

Ms. Vanessa Countryman
January 14, 2026
Page 5

provision stated that, "[t]o the extent collected CAT fees exceed CAT costs, including the reserve of 25% of the annual budget, such surplus will be used to offset future fees."  Accordingly, the 2023 funding model contemplated the possibility of a surplus reserve exceeding 25% of the budget, and that such surplus would be used to offset future fees incurred by CAT (as discussed in the preceding section).

In November 2024, the Operating Committee originally approved a 2025 operating budget of approximately $249 million.  Based on this budget, the Operating Committee established CAT Fee 2025-1, with a fee rate of $0.000022 per executed equivalent share beginning with transactions in January 2025.  In May 2025, the Operating Committee revised the budget down by $21 million dollars to approximately $228 million to reflect cost savings achieved through the implementation of the 2024 Cost Savings Amendment and other optimizations.  Based on this budget, the Operating Committee established CAT Fee 2025-2, with a significantly reduced fee rate of $0.000009 per executed equivalent share beginning with transactions in July 2025, to replace CAT Fee 2025-1.  As detailed in the fee filings establishing CAT Fee 2025-2, the amount of the surplus reserve was primarily driven by (i) the collection of CAT fees in excess of the budgeted CAT costs for 2024 and 2025 as a result of the greater actual executed equivalent share volume than the projected executed equivalent share volume for CAT Fees 2024-1 and 2025-1, and (ii) a reduction in anticipated budgeted costs associated with the implementation of certain cost savings measures approved by the SEC pertaining to the processing of options market maker quotes and the storage of certain data.[21]  Accordingly, the surplus reserve resulted from greater volumes than initially projected and the material cost savings CAT LLC achieved in 2025.

*     *     *

Thank you very much for your attention to this matter.  If you have any questions or comments, please contact me at rwalley@deloitteretired.com.

Respectfully Submitted,

*/s/ Robert Walley*

Robert Walley
CAT NMS Plan Operating Committee Chair

---

[21]    *See, e.g.*, Securities Exchange Act Rel. No. 103387 (July 3, 2025), 90 Fed. Reg. 30274, 30288 (July 9, 2025).

Ms. Vanessa Countryman
January 14, 2026
Page 6

cc.    The Hon. Paul S. Atkins, Chair
       The Hon. Hester M. Peirce, Commissioner
       The Hon. Caroline A. Crenshaw, Commissioner
       The Hon. Mark T. Uyeda, Commissioner
       Mr. Jamie Selway, Director, Division of Trading and Markets
       Mr. David Hsu, Assistant Director, Division of Trading and Markets
       Ms. Erika Berg, Special Counsel, Division of Trading and Markets
       CAT NMS Plan Participants