# EXHIBIT 1



December 19, 2025

Ms. Vanessa Countryman
Secretary
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

> **Re:    Prohibition on the Use of Reserve Funds by the Consolidated Audit Trail National Market System Plan**

Dear Ms. Countryman:

The Securities Industry and Financial Markets Association ("SIFMA")[1] submits this letter to the U.S. Securities and Exchange Commission ("Commission" or "SEC") in connection with our ongoing review of the proposed amendment ("Proposed Amendment") to the Consolidated Audit Trail National Market System Plan ("CAT NMS Plan") to effectively readopt the now-vacated CAT funding model.[2]  CAT LLC filed the Proposed Amendment with the Commission purportedly in an attempt to address the decision by the 11th Circuit Court of Appeals that vacated the 2023 CAT funding model as of December 1, 2025.[3]

On October 21, 2025, SIFMA submitted a comment letter to the Commission urging it to disapprove the Proposed Amendment,[4] a view that was shared by a number of other commenters, including certain of the Plan Participants.  On December 18, 2025, the Plan Participants

---

[1] SIFMA is the leading trade association for broker-dealers, investment banks and asset managers operating in the U.S. and global capital markets. On behalf of our industry's one million employees, we advocate on legislation, regulation and business policy affecting retail and institutional investors, equity and fixed income markets and related products and services. We serve as an industry coordinating body to promote fair and orderly markets, informed regulatory compliance, and efficient market operations and resiliency. We also provide a forum for industry policy and professional development. SIFMA, with offices in New York and Washington, D.C., is the U.S. regional member of the Global Financial Markets Association (GFMA).

[2] Release No. 34-103960 (Sept. 12, 2025), 90 FR 44910 (Sept. 17, 2025).  Consolidated Audit Trail, LLC ("CAT LLC") filed the Proposed Amendment on behalf of the self-regulatory organizations ("Plan Participants") that are parties to the CAT NMS Plan.  Capitalized terms not defined in this letter have the same meaning as in the CAT NMS Plan.

[3] *Am. Sec. Ass'n et al. v. SEC*, No. 23-13396 (11th Cir.) (July 25, 2025), available at https://media.ca11.uscourts.gov/opinions/pub/files/202313396.pdf.

[4] Letter from Katie Kolchin and Joseph Corcoran, SIFMA to Vanessa Countryman, SEC (Oct. 21, 2025), available at https://www.sec.gov/comments/4-698/4698-670807-2023354.pdf.

Ms. Vanessa Countryman
U.S. Securities and Exchange Commission
December 19, 2025
Page 2

responded to the comments submitted on the proposal.[5]  We are reviewing the response letter and may provide additional comments on the Proposed Amendment in light of the response and the Commission's recent order instituting proceedings ("OIP") regarding it.[6]  In the meantime, we write to express our concerns about the Plan Participants' intent to fund CAT through the millions in reserves it has built up in 2024 and 2025 under the now-vacated funding model.[7]  Spending down the reserves at this point would be unlawful and inconsistent with the Court's decision vacating (i.e., removing) the entire 2023 funding model that was added to the CAT NMS Plan for multiple reasons.[8]  We also note that such a course of action would be contrary to any remedy needed to address what appears to be significant overcharging of CAT fees by CAT LLC in 2025.  Furthermore, for the reserves it currently holds, we recommend that CAT LLC hold them in escrow until the Commission and industry stakeholders are able to chart a new path forward on CAT funding.

***The 11th Circuit's decision eliminated CAT LLC's funding authority under the 2023 CAT funding model.***

As of December 1, 2025, the Court vacated the CAT funding model adopted in September 2023.[9]  Not only does the decision mean that CAT LLC no longer has the authority to collect CAT fees pursuant to the 2023 funding model, but all of the provisions governing the 2023 funding model in the CAT NMS Plan, including the one governing reserve funds, are invalid and no longer in effect.  That includes a provision in Article XI allowing the CAT NMS Plan to include in its budget "an amount reasonably necessary to allow the Company to maintain a reserve of not more than 25% of the annual budget."[10]  The same provision stated: "To the extent collected CAT fees exceed CAT costs, including the reserve of 25% of the annual budget, such surplus shall be used to offset future fees."[11]

With regard to CAT funding, the Court's decision places the Plan Participants in the position they were in prior to the Commission's approval in September 2023 of the now-vacated funding model, which is no longer part of the CAT NMS Plan.  Prior to September 2023, the

---

[5] Letter from Robert Walley, CAT NMS Plan Operating Committee Chair to Vanessa Countryman, SEC (Dec. 18, 2025), available at https://www.sec.gov/comments/4-698/4698-685927-2125515.pdf.

[6] Release No. 34-104234 (Nov. 21, 2025), 90 FR 54438 (Nov. 26, 2025).

[7] See CAT NMS Plan letter, supra n. 5 at p. 13.

[8] As described in the Proposed Amendment, in September 2023 CAT LLC amended the CAT NMS Plan to adopt the so-called "Executed Share Model," which "charged fees based on executed equivalent share volume of transactions in Eligible Securities." 90 FR at 44910.  The Executed Share Model adopted in 2023 replaced the "Original Funding Model," which "charged fees based on market share and message traffic." Id.

[9] See *Am. Sec. Ass'n et al. v. SEC,* supra n. 2 at. pp. 28-29 (imposing a 60-day stay of its decision).

[10] Article XI, Section 11.1(a)(ii), CAT NMS Plan (Sept. 6, 2023), available at https://catnmsplan.com/sites/default/files/2025-06/LLC_Agreement_of_Consolidated_Audit_Trail_LLC_as-of-9.06.23.pdf.

[11] Id.

Ms. Vanessa Countryman
U.S. Securities and Exchange Commission
December 19, 2025
Page 3

Plan Participants funded CAT directly because the Commission had not yet approved a funding model for the CAT. The Plan Participants thus are now subject to the same funding obligations as they were prior to the Commission's approval of the 2023 funding model.

***The Court's decision prohibits CAT LLC from using any funds, including any reserves, collected pursuant to the vacated funding model to fund ongoing and future CAT costs.***

According to the most recent "Revised 2025 Financial and Operating Budget" posted on the CAT NMS Plan's website, the Plan's liquidity reserve balance is estimated to be $125,128,336 as of the end of 2025.[12] In a recent fee alert, CAT LLC stated that subsequent to the invoices it will issue in late December 2025 for November 2025 activity, it will not issue additional invoices for CAT fees to Industry Members "until further notice."[13] While the statement confirmed that CAT LLC no longer will charge CAT fees pursuant to the 2023 funding model, it raised the question of how the Plan Participants plan to pay for the CAT beginning in December 2025 since the funding model is no longer in place.[14] As discussed, the CAT NMS Plan confirmed that CAT LLC intends to fund the CAT by spending down the reserve amount.[15] CAT LLC cannot do so for multiple reasons.

First, as discussed, all of the money in the reserve fund was charged and collected using the authority given to CAT LLC by the now invalid 2023 funding model. Based on the Court's vacatur of the 2023 funding model, CAT LLC is now prohibited from using the reserves in any manner to fund the CAT. If CAT LLC is funding its ongoing operations costs using the reserves collected under the 2023 funding model, it would effectively extend the life of the unlawful 2023 funding model well beyond the date of its vacatur.

Second, the Plan Participants introduced the concept of a reserve in the funding model of the CAT NMS Plan to serve as a financial buffer, helping smooth out fluctuations and prevent sudden changes in fees and manage timing mismatches between fee collection and actual CAT expenses.[16] The reserve was not intended for use by the Plan Participants or the SEC as a way to

---

[12] We note that this estimated level of reserves, which is not a final audited amount and therefore may be underreporting the accurate reserve level, appears to be well in excess of the 25% maximum level of reserves that was previously permitted by the now invalidated funding model. CAT LLC has not provided any explanation for this apparent extreme overcollection of reserve funds. See CAT LLC's Revised 2025 Financial and Operating Budget on Nov. 7, 2025, available at https://www.catnmsplan.com/sites/default/files/2025-11/11.07.25-CAT-LLC-2025-Finacial_and_Operating-Budget.pdf.

[13] See https://catnmsplan.com/sites/default/files/2025-11/11.25.25-CAT-Fee-Alert-2025-4.pdf.

[14] See *Am. Sec. Ass'n et al. v. SEC*, supra n. 3, at p. 27 ("Our vacatur of the 2023 Funding Order leaves the CAT without a mechanism for the equitable allocation of costs between self-regulatory organizations and broker-dealers, and the Commission and the industry need some time to adjust and react to this reality.").

[15] See CAT NMS Plan letter, supra n. 5 at p. 13. See also CAT LLC – 2026 Financial and Operating Budget on Dec. 8, 2025, available at https://catnmsplan.com/sites/default/files/2025-12/12.08.25-CAT-LLC-2026-Financial_and_Operating_Budget.pdf.

[16] See Release No. 34-98290 (Sept. 6, 2023), 88 FR 62628, 62657 (Sept. 12, 2023).

Ms. Vanessa Countryman
U.S. Securities and Exchange Commission
December 19, 2025
Page 4

avoid addressing the lack of a proper funding model.  Using the reserve when its legal foundation has been deemed invalid contradicts its core purpose.  Treating the reserve as a fund for the Plan Participants in the absence of a lawful funding model also could set a negative precedent for including such a reserve in future models.  Any attempt by the Plan Participants to use the reserves to fund CAT costs would be in direct contravention of the Court's decision and unlawful.

Third, Article XI as amended by the 2023 funding model has been eliminated as of December 1, 2025.  And just as the Court's decision confirmed that CAT LLC has no authority to charge CAT fees on behalf of Plan Participants, the decision also confirmed that CAT LLC has no authority to use (or further collect) any reserve funds under the unlawful funding model.  All that is left governing the reserve in Article XI is the directive that "[a]ny surplus of the Company's revenues over its expenses shall be treated as an operational reserve to offset future fees."[17]  However, there will be no "future fees" to "offset" unless and until the SEC approves a new (and lawful) funding model.  CAT LLC therefore cannot spend down the reserve in the absence of such a model and fees subsequently charged under it.

Fourth, the level of the reserve—over $125 million—indicates that CAT LLC collected more fees from Industry Members than the funding model permitted even while the 2023 funding model was still in effect.  As discussed, the 2023 funding model capped the reserve at 25% of CAT LLC's annual budget, directing that anything over that threshold be used to offset CAT fees.  CAT LLC's 2025 budget was estimated at $248.8 million at the beginning of the year, resulting in a cap of roughly $62.2 million.  Therefore, a reserve of more than $125 million is *more than double* the amount permitted by the 2023 funding model, and the true overage is likely even higher because CAT LLC's 2025 budget (and thus the 25% cap) has since decreased, now down to an estimated $182 million.[18]  This apparent overcollection must be remedied before the reserve can be spent down.  This apparent overcollection of reserves under the 2023 funding model also provides yet another reason for the Commission to disapprove the Proposed Amendment, which contains no safeguards to prevent CAT LLC from over-collecting again in the future.

---

[17] See https://catnmsplan.com/sites/default/files/2025-06/LLC_Agreement_of_Consolidated_Audit_Trail_LLC-as-of-3.24.23.pdf.

[18] It is unclear why CAT LLC did not project or foresee this downward cost trajectory when it had an estimated Liquidity Reserve Balance of $111 million at the end of Q2 2025, and as we understand it, CAT has the ability to make a mid-year adjustment to CAT fees.  See CAT LLC's Revised 2025 Financial and Operating Budget on May 19, 2025, available at https://catnmsplan.com/sites/default/files/2025-05/05.19.25-CAT-LLC-2025-Financial_and_Operating-Budget.pdf.

Ms. Vanessa Countryman
U.S. Securities and Exchange Commission
December 19, 2025
Page 5

***CAT LLC should freeze the reserve fund and hold the funds in escrow for the benefit of CAT reporters that contributed CAT fees to the reserve fund. If CAT LLC is unwilling or unable to do that, the Commission should order CAT LLC to do so.***

We urge CAT LLC to publicly address how it plans to fund the CAT going forward because, as discussed, the Court's decision precludes CAT LLC from using any of the reserve to pay for CAT costs because all of those funds were charged and collected pursuant to the now-invalidated funding model. We also urge CAT LLC to establish an open and transparent mechanism to fairly address the reserves, including apparent overcollections, CAT LLC charged and collected for CAT transactions under the unlawful 2023 funding plan once the Plan Participants arrive at a new funding model that is consistent with their statutory and regulatory obligations.

We recommend that the Commission work with CAT LLC to ensure it holds the reserve funds in escrow until the Commission can complete its comprehensive review of the CAT. There are a number of potential long-term solutions for handling the improperly collected funds. But those solutions could be undercut by allowing CAT LLC to proceed with its plan to spend away the reserve even before the Commission has a chance to decide how to proceed with the Proposed Amendment. The Commission should therefore take action to preserve the integrity of the judicial ruling.

*            *            *

SIFMA looks forward to working with the Commission and the Plan Participants to ensure a transparent and lawful approach to CAT funding going forward. If you have any questions or need any additional information, please contact Katie Kolchin at (212) 313-1239, Joe Corcoran at (202) 962-7383, or Gerald O'Hara at (202) 962-7343.

Sincerely,

Katie Kolchin, CFA
Managing Director, Head of Equity &
Options Market Structure

Gerald O'Hara
Vice President & Assistant
General Counsel

5